STATE of South Dakota, Plaintiff and Appellee,

v.

Rodney HARTLEY, Defendant and Appellant.

No. 13575.

Supreme Court of South Dakota.

Considered on Briefs March 25, 1982.

Decided Nov. 17, 1982.

Mark Smith, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Lee A. Tappe, Platte, for defendant and appellant.

FOSHEIM, Chief Justice (on reassignment).

Appellant Rodney Hartley appeals from a jury verdict finding him guilty of third-degree burglary. We remand.

Several items of clothing and food were taken from a store in Wagner, South Dakota, on March 13, 1981. Deputy Sheriff Ed Zylstra and Police Chief Francis Mach took

appellant into custody for questioning regarding the burglary at approximately 8:00 a.m. that morning. Deputy Zylstra testified that he informed appellant of his rights as required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant was then transported to the police station in silence.

Upon arriving at the police station, appellant was placed in an interrogation room and was again advised of his *Miranda* rights. During this interrogation appellant stated, "I don't know nothing about anything." While Deputy Zylstra testified that appellant did not request an attorney during this interrogation, appellant claims he requested an attorney three times. After the questioning was completed, appellant was placed in a cell. This interrogation session was videotaped. Later that day, appellant was again taken to the interrogation room where he was informed of his *Miranda* rights, this time by Sheriff Ruben Huber. Appellant acknowledged that he understood his rights and Sheriff Huber and Officer Thomas Hartley, appellant's brother, began questioning appellant. Officer Hartley testified that initially appellant "didn't want to tell me nothing . . . . And he, you know, kept telling me, you know, he didn't want to talk about it." Sheriff Huber agreed that initially appellant was unwilling to talk. The sheriff then left the room. However, Officer Hartley continued questioning his brother, with the result that appellant confessed to the burglary. This second interrogation session was not videotaped. At some point after March 13th, appellant's counsel arranged to view the videotape of the first session. However, when he arrived at the Law Enforcement Center he was told that the videotape had been erased because it contained nothing that could aid the State.

Appellant moved to suppress his confession on the ground that all questioning should have stopped after he requested the assistance of counsel during his first interrogation.

1. The State must prove these issues beyond a reasonable doubt. *State v. Cody,* 293 N.W.2d

The issues on appeal point up the problem we encounter when the trial court fails to enter explicit findings of fact and conclusions of law following a hearing on a motion to suppress. *State v. Stumes,* 90 S.D. 382, 241 N.W.2d 587 (1976); *See State v. Lufkins,* 309 N.W.2d 331 (S.D.1981) (dissenting opinion). While this court much prefers the entry of written formal and specific findings and conclusions, verbal findings and conclusions made on the record are acceptable. *State v. Janis,* 321 N.W.2d 527 (S.D.1982); *State v. Lewis,* 90 S.D. 615, 244 N.W.2d 307 (1976). However, whether findings and conclusions are formally entered or orally made on the record, they must be such that there is no room for speculation and conjecture concerning what the trial court found or concluded. *See Stumes, supra.* Here the trial court made its determination of voluntariness on the record. The problem is that the trial court did not specifically find whether defendant requested counsel at his first interrogation session. It is not our function to make findings or conclusions for the trial court or to surmise what was intended; rather, it is our province to determine if the findings are supported by evidence and if the conclusions are warranted by findings. The reason for such delineation of responsibility is here demonstrated where the trial court's comments are susceptible of more than one interpretation.

The state of the record requires that this case be remanded with directions for the trial court to enter specific findings on the issues of voluntariness and waiver raised by defendant's motion.[1] However, since the destruction of the videotape necessarily intrudes upon that fact-finding process, we will discuss that element.

Appellant claims that destruction of the videotape denied him due process of law under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Parker,* 263 N.W.2d 679 (S.D.1978).

440 (S.D.1980).

While stating that the videotape had no direct bearing on the issue of guilt or innocence at trial, appellant urges that such destruction was nevertheless prejudicial because of its impact on the issue of whether his confession was admissible under the Fifth Amendment's guarantee against compulsory self-incrimination.

■ A defendant is denied due process of law guaranteed by the Fourteenth Amendment, and thus a fair trial, when evidence material to his guilt or punishment has been suppressed. The nondisclosure of evidence affecting the credibility of witnesses also violates the due process clause. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Brady v. Maryland, supra; Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). *Napue,* 360 U.S. at 269, 79 S.Ct. at 1677, states: "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." And the United States Supreme Court has decided that the good faith or bad faith of the State in suppressing or destroying material evidence is not a consideration; instead, the inquiry focuses on the character of the evidence suppressed and the effect of such suppression on the defendant's right to a fair trial. *Smith v. Phillips,* —— U.S. ——, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); *Agurs, supra; Giglio, supra; Brady, supra.*

*Agurs* noted that the *Brady* doctrine applies to "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *Agurs,* 427 U.S. at 103, 96 S.Ct. at 2397. Here we are concerned with a pre-trial motion to suppress a confession where all the relevant facts are within the knowledge of the prosecution and the defense. The only question is which version is correct. It is the function of the trial judge at a suppression hearing to weigh the credibility of witnesses and decide the disputed facts. Undoubtedly the videotape would have simplified that task, but the tape's destruction did not render the trial court's function impossible. It was a factor the trial court could consider in deciding the facts. Without condoning the destruction of the videotape, we conclude that it does not come within the ambit of *Brady.*

■ We move on to the issues of voluntariness and waiver. In this regard we first note that it appears the trial court may have erroneously assigned importance to the fact that appellant made no admission at the first interrogation session and that he did not persist in requesting the presence of counsel at the second interrogation session. The trial court stated:

He [Chief of Police Mach] said there was no Miranda rights given at the residence; Officer Zylstra said there was. They both say that they didn't ever hear the defendant request an attorney at the interrogation center, or at the Law Enforcement Center. Now, that is *immaterial to me* because it is absolutely clear that this defendant has never made any admissions to any law enforcement person, let alone to any other person, until approximately 2:30 in the afternoon. So as far as the motion to suppress the statement, we have to take the motion as it pertains to a time when this defendant has made admissions as to guilt, and make a determination whether or not his constitutional rights have been abridged or denied at that time. And if so, then the motion should be granted and the admissions suppressed.

\* \* \* \* \* \*

Sheriff Huber testified that he again advised him of his rights, which again covered his right to counsel. And Mr. Hartley was well aware of the fact of that advice because it had been given earlier. Assuming what he said is true, he did make this statement in the morning, *he should have reasserted that right at 2:30. Very simply, very clearly, that is all he had to do.* He never did. His excuse to

this court is "Well, I did it once, that should be enough." That is the purpose of the Miranda Warning. If the Miranda Warning had not been given, that might make a difference. But he was reminded again at 2:30 that he had a right to counsel, that is the time he should have said "Yes, I want a lawyer here before you talk to me."

Now, I am going to dispose of this matter, you [Mr. Cotton, appellant's trial counsel] just as well sit down. There is no question in my mind that he understood the rights. It is clear to me that his intellect is sufficient to understand those rights. He made the statement: "I understand them." They were repeated in the morning, they were repeated in the afternoon. There is some evidence they were stated to him at 8:00 in the morning at the residence. But putting that aside, this man was fully apprised of his rights, and the individual right of counsel, *and he could not and should not have relied on his claimed statement in the morning,* which is denied by Officer Zylstra. And of course, I make the judgment in this court as to the credibility of the witnesses in this case. And it was denied by Mr. Zylstra that he ever made that statement. *Even if he did, I am telling you it makes no difference, he had a duty to say it at the 2:30 interrogation when he was again advised of his rights* and particularly told he could have a lawyer present. *This is the time* he should have said, "This is it fellows, I want my lawyer." *And he never said a word. He just kept silent* until today and we find out he was relying on the statement in the morning to cover him in the afternoon. *And based on that,* without going through all of the testimony, your motion to suppress the admission of this defendant as to any conversation or any admissions made by this defendant in the presence of Sheriff Huber and Tom Hartley will be received and determined to be absolutely voluntary and with the Miranda Warning.

Transcript of Suppression Hearing, pp. 65–68 (emphasis added). From *Miranda, supra,* and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), it is clear that whether an accused made an admission or kept repeating his request for counsel is immaterial, what is material is whether the right to counsel was asserted.

 As pointed out in *Edwards, supra,* and *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the issues of voluntariness and waiver are discreet inquiries. *Schneckloth* said that a confession is voluntary if it was made freely and unconstrainedly and the accused's will was not overborne.

In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep. In all of these cases, the Court determined the factual circumstances surrounding the confession, assessed the psychological impact on the accused, and evaluated the legal significance of how the accused reacted.

... [T]he Due Process Clause [does not require] the prosecution to prove as part of its initial burden that the defendant *knew* he had a right to refuse to answer the questions that were put. While the state of the accused's mind, and the failure of the police to advise the accused of his rights, were certainly factors to be evaluated in assessing the "voluntariness" of an accused's responses, they were not in and of themselves determinative.

412 U.S. at 226, 93 S.Ct. at 2047 (citations and footnote omitted, emphasis added). Because appellant was subjected to the subtle compulsion of questioning in private by his brother, a police officer, after appellant said he did not want to talk, the trial court

must pay particular heed to *Miranda's* admonition that

> [i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.

384 U.S. at 473–74, 86 S.Ct. at 1627–28 (footnote omitted).

Unlike the idea of voluntariness, waiver of constitutional rights implies knowledge. *Schneckloth, supra.* Whether appellant waived his Fifth Amendment rights must be answered by the trial court using the totality-of-the-circumstances approach. That is, considering appellant's age, experience, education, background and intelligence, did he understand the *Miranda* warnings and the nature of his Fifth Amendment rights and did he knowingly and intelligently forego his right to remain silent and to have the assistance of counsel. *Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *Miranda, supra; Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). An accused's request for counsel is "*per se* an invocation of his Fifth Amendment rights, requiring that all interrogation cease." *Fare,* 442 U.S. at 719, 99 S.Ct. at 2568; *Edwards, supra. Miranda,* 384 U.S. at 474, 86 S.Ct. at 1627, specifically stated:

> If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.

*Miranda's* waiver of counsel requirement was explained in *Edwards,* 451 U.S. at 484–85, 101 S.Ct. at 1884, to mean that "additional safeguards are necessary when the accused asks for counsel." *Edwards* held that:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.... [A]n accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates* further communication, exchanges, or conversations with the police. (Footnote omitted, emphasis added.)

If the trial court enters findings and conclusions that defendant's confession was admissible in evidence, the conviction is affirmed. If the court finds otherwise, a new trial is ordered. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Janis, supra; Stumes, supra.*

We remand.

All the Justices concur.