STATE of South Dakota, Plaintiff
and Appellee,

v.

Justin Lloyd BULT, Defendant
and Appellant.

No. 14265.

Supreme Court of South Dakota.

Argued March 20, 1984.

Decided June 6, 1984.

Mark A. Moreno, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Richard P. Green of Green & Green, DeSmet, for defendant and appellant.

WUEST, Circuit Judge.

Appellant, Justin Bult, was convicted of kidnapping and sexual contact with a child under fifteen. We affirm.

The state's evidence shows at approximately 5:10 p.m., September 15, 1982, fourteen-year-old Duane Hedge, a neighbor of the five-year-old girl who was the victim in this case, saw appellant carry the victim to a blue Nova automobile which was parked in an alley behind the Hedge residence. Hedge knew appellant and positively identified him as the man who had put the girl, who was screaming and crying, into the automobile. After entering his automobile, appellant noticed Hedge, uttered an expletive, and drove away at a high rate of speed. At approximately 5:35 p.m. that afternoon, the victim's mother heard her daughter screaming in the yard. In response to her mother's questions, the young girl, who was upset and hysterical, said that a man had taken her out in the country, and further stated, "Mom, he put his wiener in me." In response to the mother's call, Captain Rand of the Huron Police Department arrived moments later and advised the parents to take the child to the hospital for an examination.

The child was examined between 6:00 and 7:00 p.m. at the Huron Regional Hospital by Dr. Buchanan. At that time the mother observed that the vulva-labia area of the child's genitals was irritated, red, and a little bit swollen. There was a scratch on her right thigh. Dr. Buchanan could not see any direct evidence of penetration, "in other words, no tear." He performed two tests, one to determine evidence of gonorrhea, and the other for sperm. He found neither. He saw a strange abrasion on the right thigh which looked like a rope burn to him.

Captain Rand saw the victim shortly after the examination and observed that she was very upset and nervous. He asked her what had taken place. She told him that a man had walked by her twice, grabbed her off her tricycle, put her in a car and drove out in the country by a corn field where he held her down on the seat, took her clothes off and "tried to put his wienie in her" while she was lying on the seat. After the interview by Rand, the mother changed the child's clothes. She noticed marks on the child's breast and neck areas. The child did not have any marks upon her body, nor was the irritation in the genital area present when she was bathed by her mother the evening before the incident.

About 7:30 p.m. on the evening of the alleged kidnapping, Steven Hofmann, a Beadle County Deputy Sheriff, called appellant and asked him to come to the Regional Correctional Center in Huron. Appellant and Lauren Gamber, his cousin, drove to the correctional center in appellant's blue Nova Chevrolet, which he parked in the parking area. Appellant was advised of his *Miranda* rights and then interrogated by Captain Rand and Deputy Hofmann shortly after 8:00 p.m. Appellant denied being implicated, but later told the officers that he had picked the little girl off her tricycle, drove her north of the Plains Motel, stopped along the road somewhere, put her in the backseat, took her clothes off and made love to her, took her back about a block from where her tricycle was and told her how to find her tricycle. Appellant refused to sign a written confession.

Shortly after 8:00 p.m. that same evening, the victim's mother took her daughter to the correctional center in order to talk to a social services counselor. Upon reaching the area, the child told her mother that she recognized a car parked outside the correctional center as the one used by her abductor. Later, the child, her mother, the social services counselor, and another person went outside the correctional center, where

the child pointed out the car she had recognized earlier, which was the blue Chevy Nova driven by appellant.

A pediatrician testified that a medical examination he performed three days later revealed redness and local irritation of the external genitalia. A witness from the state crime laboratory testified that a hair found on the carpet of appellant's vehicle and a hair sample from the victim were similar with respect to all observable characteristics. He also testified that foreign fiber from the victim's jumpsuit and a fiber taken from the carpet were similar with respect to all observable characteristics and that foreign fibers found on the victim's jumpsuit and non-foreign fibers contained in appellant's orange jacket were similar in all observable characteristics.

Appellant took the stand in his own behalf and denied the charges. He testified that his statement to the officers had been made to get them "off his back." Appellant's mother and Lauren Gamber testified as alibi witnesses. Appellant also called Dr. Buchanan, who said that he had found no positive evidence of any sexual contact. Appellant's father also testified as to certain distances for the purposes of establishing an alibi.

Appellant claims that the court erred in denying his motion for a judgment of acquittal because (a) there was insufficient proof as a matter of law of the corpus delecti, and (b) there was insufficient corroboration as a matter of law of appellant's admission to the officers. The thrust of his claims is that absent the admission there is no proof of "sexual contact," thereby negating the sexual contact charge, and that absent the admission there is no corroboration of the kidnapping charge because the state failed to prove that the defendant's purpose was to facilitate the commission of a felony (the sexual contact charge), which is one of the elements of kidnapping. SDCL 22–19–1. So the crux of those contentions is, was there enough evidence to show "sexual contact"?

A motion for judgment of acquittal is made pursuant to SDCL 23A–23–1.

The trial court must consider the evidence in the light most favorable to the nonmoving party when ruling on a motion for judgment of acquittal and must give the nonmoving party the benefit of all reasonable inferences in its favor. *State v. Decker*, 317 N.W.2d 138 (S.D.1982); *State v. Gallegos*, 316 N.W.2d 634 (S.D.1982); *State v. Vogel*, 315 N.W.2d 321 (S.D.1982). A motion for judgment of acquittal is properly denied if the state has introduced evidence from which, if believed, the jury may reasonably find the defendant guilty of the crime charged. *State v. Blakey*, 332 N.W.2d 729 (S.D.1983); *State v. Decker*, *supra;* *State v. Miller*, 313 N.W.2d 460 (S.D.1981); *State v. Myott*, 246 N.W.2d 786 (S.D.1976); *State v. Peck*, 82 S.D. 561, 150 N.W.2d 725 (1967). The state may prove all elements of the crime with circumstantial evidence. *State v. Wilson*, 297 N.W.2d 477 (S.D.1980).

Sexual contact is defined by SDCL 22–22–7.1 as "any touching, not amounting to rape, of the breasts of a female or the genitalia or anus of any person with the intent to arouse or gratify the sexual desire of either party." There was sufficient evidence introduced by the state to establish the sexual contact element of SDCL 22–22–7. There was the statement of the victim to her mother, "Mom, he put his wiener in me." In addition, the vulva-labia area of the genitals was irritated, red, and swollen immediately after the incident, a condition that had not been present the night before. The pediatrician testified that the girl's external genitals revealed redness and local irritation two days later. Considered with the state's other evidence—but excluding the admission—there was sufficient evidence to prove "sexual contact" and appellant's purpose was to facilitate the commission of that felony, one of the elements of kidnapping. SDCL 22–19–1.

Prior to trial, appellant moved to suppress the oral admissions given to the law enforcement officers. After a hearing at which the officers and appellant testified, the trial court entered its findings of fact

and conclusions of law that the state had proven beyond a reasonable doubt that appellant understood his *Miranda* rights and knowingly and intelligently and voluntarily waived the same. The trial court further held that the state had proven beyond a reasonable doubt that the oral admissions were voluntary and not the result of coercion, threat or promise. The admission was received in evidence at trial over appellant's continuing objection. Appellant contends that the trial court erred in overruling the motion to suppress and appellant's objections at the trial.

 In examining the issue of the voluntariness of a confession or admission, this court has stressed that the trial court's finding of voluntariness will not be overturned unless it is clearly erroneous. *State v. Hintz*, 318 N.W.2d 915 (S.D.1982); *State v. Lyons*, 269 N.W.2d 124 (S.D.1978). This court has also stressed that it will consider the evidence addressed in a light most favorable to support the denial of an appellant's suppression motion. *State v. Hintz, supra; State v. Kiehn*, 86 S.D. 549, 199 N.W.2d 594 (1972). Unlike the idea of voluntariness, waiver of constitutional rights implies knowledge. *State v. Hartley*, 326 N.W.2d 226 (S.D.1982). Whether appellant waived his constitutional rights must be answered using the totality of the circumstances approach. That is, considering appellant's age, experience, education, background, and intelligence, did he understand the *Miranda* warnings and the nature of his constitutional rights and did he knowingly and intelligently forego his right to remain silent and to have the assistance of counsel? *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *State v. Hartley, supra*. In addition, this court must apply the "clearly erroneous standard" with respect to the waiver issue and must consider the trial court's denial of appellant's suppression

motion in a favorable light. *State v. Lyons, supra; State v. Kiehn, supra.*

Evidence supporting the trial court's conclusion as to voluntariness and waiver are as follows: Appellant was 18 years of age and a senior in high school. He was read his *Miranda* rights and signed a statement that he understood them. He did not request an attorney nor assert his right to remain silent. He was given no promises in return for his statement, nor was he coerced, threatened or intimidated into making an admission. He was not subjected to any physical punishment nor abused in any way. Against this evidence was appellant's suppression hearing claim that he did not understand his *Miranda* rights and that he had made the statement to get the officers, "off his back."

 We conclude that the evidence produced at the suppression hearing was sufficient to support the trial court's ruling. We must give deference to the trial judge's ability to observe the witnesses during their testimony and to determine their credibility.

Appellant claims that the trial court erred in permitting the child's hearsay statement to her mother that she recognized the car parked outside the correctional center as the one that she had been driven off in by her abductor and the later hearsay statement the child made to her mother, the social services counselor and the third person when she pointed out the car.

 SDCL 19–16–6 provides that a statement relating to a startling event or condition made while a declarant was under the stress of excitement caused by the event or condition is not excluded by the hearsay rule even though the declarant is available as a witness. This rule is referred to as the excited utterance exception to the hearsay rule and is a verbatim copy of the federal rule, which this court adopted in 1978. "The assumption underlying this exception is that a person under the sway of excitement precipitated by an external startling event will be bereft of

the reflective capacity essential for fabrication and that, consequently, any utterance he makes will be spontaneous and trustworthy." Weinstein's Evidence, § 803(2)[01] at 803–79 (1981). Lack of capacity for fabrication rather than lack of time to fabricate is the justification for this rule, and there is no pat answer as to the length of time that elapsed between the event and the utterance. " '[T]he character of the transaction or event will largely determine the significance of the time factor.' The crucial point is that the court must be able to find that the declarant's state at the time he made the declaration ruled out the possibility of conscious reflection." *Id.* at 803–84 (footnote omitted). The declarant must be "under the stress of excitement." "[T]here are two aspects to this requirement: (1) the judge must find that because of the event the declarant was excited and (2) that he still was excited when he made the statement." *Id.* at 803–83. The exception embodied in SDCL 19–16–6 was deduced initially by Wigmore from his analysis of res gestae cases. *Id.* at 803–78. Therefore, it is not surprising to find that prior to our adoption of the federal rules this court stated in *State v. Percy*, 80 S.D. 1, 7, 117 N.W.2d 99, 102 (1962):

> While the time that elapsed between the event and the statment is a factor to be considered, it is not determinative. Whether an utterance was made under the influence of the event must be determined on the basis of the circumstances in each case. The admissibility of such statements is in the sound discretion of the trial court and we will disturb his holding only if convinced that such discretion was abused.

The court reiterated this rule when Percy was subsequently tried for kidnapping arising out of the same incident. *State v. Percy*, 81 S.D. 519, 137 N.W.2d 888 (1965).

For the purposes of this appeal the issue is whether the victim was "under the stress of excitement" at the time the challenged statements were made. The mother testified that the child was withdrawn, nervous, and still crying at the time she was taken to the correctional center. In addition, her statement to her mother regarding the blue Nova automobile was spontaneous. We therefore conclude that the trial court did not abuse its discretion in admitting this statement. The later statement to the mother presents a more difficult question. It is a factual situation wherein trial courts might differ. But since the child was still nervous and crying, and there was no prompting by the adults, we hold the trial court did not abuse its discretion by permitting it in evidence.

The trial court used the South Dakota Pattern Jury Instruction 1–6 (alternate) for defining reasonable doubt. This instruction omitted any reference to the "moral certainty" phrase found in the usual instruction. In addition, the court instructed on circumstantial evidence and deleted "moral certainty" from that instruction. Appellant claims the "moral certainty" phrase should have been included in both instructions. This phrase was discussed by this court in *State v. Brewer*, 86 S.D. 434, 197 N.W.2d 409 (1972). In that opinion, authorities were cited which held the phrase "moral certainty" is the same as reasonable doubt, and some authorities indicating the "moral certainty" standard is of a higher degree than reasonable doubt. Judge Biegelmeier, the author of the *Brewer* opinion, said therein that he believed "moral certainty" fixes a higher standard than reasonable doubt. Under either theory, the trial court was correct in deleting the "moral certainty" phrase from both instructions. Appellant was entitled to a definition of reasonable doubt and circumstantial evidence, both of which were given.* Moral certainty may be said to bear the same relation to matters relating to

---

* A circumstantial evidence instruction was given which became the law of the case. However, it was not necessary because there was direct evidence of the "carrying," and the complaint of the child to her mother regarding what appellant had done to her is direct evidence, as is appellant's admission.

human conduct that absolute certainty does to mathematical subjects. *State v. Brewer, supra.* Such proof is not required to sustain a conviction.

■ As part of appellant's defense, testimony was offered regarding some experiments conducted by appellant's father concerning the time necessary to travel from the place where appellant dropped off his cousin Lauren Gamber to the location of the victim's home, and from there to appellant's home. The trial court sustained the state's objections to this testimony upon the theory there were too many variables in the experiment to make the time element reliable. This evidence was relevant to corroborate the alibi defense. It was necessary, however, for appellant to show that the conditions of the experiment were the same as the incident such as speed, route taken, traffic flow, traffic lights, and perhaps the type of automobile. Because these conditions were not shown, the trial court did not abuse its discretion in denying this testimony, although considering the seriousness of the charges and the ability of the jury to weigh the variables involved, it may have been a better choice to admit the testimony.

The judgment of conviction is affirmed.

WOLLMAN, DUNN, MORGAN and HENDERSON, JJ., concur.

WUEST, Circuit Judge, sitting for FOSHEIM, C.J., disqualified.