**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Robert COLLIER, Defendant and Appellant.**

**No. 14912.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 21, 1985.

Decided Jan. 29, 1986.

Robert B. Vrooman, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Donald E. Erickson, Yankton, for defendant and appellant.

WUEST, Acting Justice.

This is an appeal from a judgment of conviction following a guilty verdict of aggravated assault under SDCL 22–18–1.1(5); commission of a felony while armed with other than a machine gun or short shotgun under SDCL 22–14–13; and, pimping under SDCL 22–23–8. We affirm in part, reverse in part, and remand.

On the night of June 30, 1984, Roger Grimme (Grimme) threw a bachelor party for his friend, John Kreber (Kreber). Eight or nine young men attended the party, which began at the L & R Cafe in Tyndall, South Dakota, and ended at Swede's Bar, a go-go dance bar in Lesterville, South Dakota. At trial, Grimme testified under a grant of immunity that while at Swede's Bar, he met two young women known only to him as Dee and Kari, but later identified as Debra Van Winkle (Debra) and Megan Koebzinski (Megan). Grimme told Debra that he wanted to procure the services of a prostitute for Kreber, prior to his wedding. A deal was struck and a price of $125 was set as the figure for which Kreber and Grimme would have sex with Debra and Megan. Grimme paid the price agreed upon and arrangements were made for him and Kreber to meet the two women later at Fenzel's Motel in Yankton, South Dakota.

Grimme and Kreber drove to the Yankton motel sometime after Swede's Bar closed. They parked in the neighboring Hardee's Restaurant parking lot as the motel lot was full. When the two met with Debra and Megan in the motel rooms, the young women demanded more money. Kreber gave Megan an additional $40, but the women indicated the amount was not sufficient. At this time Grimme and Kreber demanded the return of their money.

At some point in the argument, Debra pulled a gun from her purse at which time Megan left the room and reappeared with Robert Collier (appellant) who was given the gun. Grimme testified that appellant cocked the gun and held it on him and Kreber while asking them to leave the motel room, which they did.

Upon returning to their car in the Hardee's parking lot, Grimme and Kreber decided to call the police. They entered the lobby of the restaurant where a telephone is located. As Grimme dialed the operator, appellant appeared and hung up the phone. Grimme and Kreber testified that appellant produced a knife and an argument ensued, which lasted until a patrol car drove through the lot. Appellant left the restaurant lobby and headed toward the motel as Grimme flagged down the patrol car. Kreber testified that he saw appellant throw something on the motel roof. Appellant was arrested and a search of the motel roof produced a handgun from the rain gutter. The next morning, a Buck knife was found on the motel lawn.

At trial, Debra testified that she and Megan were prostitutes and that appellant

was their pimp. Appellant took the stand and admitted that the gun and knife found during the investigation were his. He also admitted knowing the two young women, but stated that he was neither their pimp nor had he threatened Grimme and Kreber with a gun or knife.

Appellant was tried before a jury and convicted of aggravated assault, the commission of a felony while armed, and pimping. He was sentenced on January 28, 1985. On February 20, 1985, however, the trial court amended the sentence and resentenced appellant to one year in the South Dakota State Penitentiary for aggravated assault, one year for pimping, and five years for the commission of a felony while armed. The one-year terms run concurrently, while the five-year term runs consecutively with the one-year terms.

Appellant's first contention on appeal is that his conviction of commission of a felony while armed with other than a machine gun or short shotgun under SDCL 22-14-13 was erroneous, inasmuch as it was in addition to the principal conviction of aggravated assault. We agree.

In the present case, the trial court instructed the jury: "It is provided by statute of this State that any person who attempts by physical menace with a deadly weapon to put another in fear of imminent serious bodily harm is guilty of the crime of aggravated assault." This definition of aggravated assault is found in SDCL 22-18-1.1(5). The court further instructed the jury:

The essential elements of the offense of aggravated assault as charged in the Information, each of which the State must prove beyond a reasonable doubt, are:

1. That defendant attempted to put another in fear of imminent serious bodily harm;

2. That the defendant did so by physical menace;

3. That the defendant did so with a deadly weapon.

Regarding the commission of a felony while armed with other than a machine gun or short shotgun under SDCL 22-14-13, SDCL 22-14-14 states:

A violation of § 22-14-12 or § 22-14-13 shall be charged in the indictment or information as a separate count in addition to the principal felony or attempted felony alleged to have been committed. *No offense may be charged under those sections when the use of a dangerous weapon is a necessary element of the principal felony alleged to have been committed or attempted.* (Emphasis added.)

As stated *supra*, the trial court instructed the jury that the use of a deadly weapon was an essential element of aggravated assault "as charged in the information." That the terms "dangerous weapon" and "deadly weapon" are synonymous for present purposes is clear. It follows that SDCL 22-14-14 is controlling, and because the use of a deadly weapon was an essential element of appellant's aggravated assault conviction, his additional conviction of the commission of a felony while armed, under SDCL 22-14-13, was erroneous. We reverse on this count and remand to the trial court with directions to dismiss it.

Prior to trial, Debra indicated to appellant's counsel that her testimony would be favorable to appellant. At trial, however, Debra testified on the State's behalf, making statements which substantiated the pimping charge and which were damaging to appellant's case. When cross-examined by appellant, she testified:

Q. Has anything intervened in that time to make you change your story, Miss Van Winkle?

A. Yes.

Q. What's intervened?

A. When I talked to you those two times I didn't want to help convict him because I'm scared of him. And I didn't want to.... and I would take perjury, contempt or anything else rather than face him. And I been offered immunity.

Prior to sentencing, appellant's counsel learned that the remaining portion of Debra's sentence for simple assault was sus-

pended in exchange for her testimony. Thereafter, appellant moved for a new trial and the motion was denied. Appellant argues that the trial court erred in denying the motion, which was based on newly discovered evidence wrongfully withheld by the State. We disagree.

At the outset, we note that a motion for new trial addresses the sound discretion of the trial judge, whose superior knowledge of all the facts and circumstances of the case enables him to know the requirements of justice. This court will not disturb the trial court's ruling on a motion for new trial unless we are convinced that there has been an abuse of discretion. *State v. Swallow,* 350 N.W.2d 606 (S.D.1984); *State v. Lufkins,* 309 N.W.2d 331 (S.D.1981); *State v. Kidd,* 286 N.W.2d 120 (S.D.1979).

Irrespective of the good or bad faith of the prosecution, the suppression of evidence favorable to an accused *upon request* violates due process where the evidence is material to either guilt or punishment. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Marshall v. State,* 305 N.W.2d 838 (S.D.1981); *State v. Reiman,* 284 N.W.2d 860 (S.D.1979); *Geelan v. State,* 85 S.D. 346, 182 N.W.2d 311 (1970). The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence. Therefore, the nondisclosure of evidence affecting the credibility of witnesses also violates due process. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Marshall, supra; State v. Hartley,* 326 N.W.2d 226 (S.D.1982).

The State concedes that the agreement to suspend Debra's sentence in return for her testimony was not conveyed to appellant. The record, however, also reveals that no discovery requests were made upon the State by appellant. As to this, SDCL 23A–13–15 of our discovery rules states:

If, prior to or during trial, a party discovers additional evidence or material *previously requested or ordered,* which is subject to discovery or inspection under §§ 23A–13–1 to 23A–13–14, inclusive, he shall promptly notify the other party or his attorney or the court of the existence of the additional evidence or material. (Emphasis added.)

In *United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342, 351 (1976), the Supreme Court considered whether a prosecutor has a constitutional duty to volunteer exculpatory matter in the absence of a request, stating: "[I]f the evidence is so clearly supportive of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise even if no request is made." The Court determined the standard by which a judicial decision concerning the constitutional effect of such nondisclosure is to be made, stating:

[I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create reasonable doubt.

427 U.S. at 112–13, 96 S.Ct. at 2402, 49 L.Ed.2d at 355.

In *State v. Wilde,* 306 N.W.2d 645, 647 (S.D.1981), we stated that "[t]hese requirements presuppose, however, that the particular evidence in question is unknown to the defendant or is of such a character that it would remain unknown to the defendant after a reasonably diligent effort to discover the evidence." In the present case, appellant's counsel was not totally disarmed by this surprise testimony. "If a defendant knows or should know of the allegedly exculpatory evidence, it cannot be said that the evidence has been suppressed by the prosecution." *Wilde,* 306 N.W.2d at 647; *see also United States v. Brown,* 628 F.2d 471 (5th Cir.1980). Counsel knew or

should have known that Debra had previously been convicted of prostitution and simple assault arising from the same incident for which appellant was on trial. Counsel could have delved into what Debra meant by "immunity," since she had previously been prosecuted for the matter and could not be prosecuted again for the same offense. He must have realized a "deal" of some kind had been made with the witness. A request for a short continuance would have afforded him an opportunity to request or move for disclosure from the state's attorney, or interview the witness, or both. Counsel could then have safely cross-examined, or done whatever trial strategy dictated. A failure to move for a continuance weighs against appellant in a subsequent attack on the admission of testimony. *See, e.g., Winckler v. Solem*, 688 F.2d 594 (8th Cir.1982); *State v. Wilson*, 322 N.W.2d 866 (S.D.1982); *State v. Fox*, 313 N.W.2d 38 (S.D.1981); *State v. Coe*, 286 N.W.2d 340 (S.D.1979); *State v. Jahnz*, 261 N.W.2d 426 (S.D.1978).

■ Perhaps counsel made the tactical decision that Debra's credibility was sufficiently destroyed, since he brought out the fact she had changed her testimony from what she had previously told him. Further, he had disclosed the "immunity," which was before the jury, and it was instructed that her credibility was for its determination. Every trial presents situations wherein counsel may second-guess his own decisions, or be subjected to the criticism of the Monday morning quarterback. Because the verdict was unfavorable does not mean counsel made the wrong tactical decision or was ineffective.

In view of the entire record, we do not believe the trial court abused its discretion when it held the information that Debra had received a suspended jail sentence in exchange for her testimony would not have created a reasonable doubt in the minds of the jury that did not otherwise exist.

FOSHEIM, C.J., MORGAN and HENDERSON, JJ., and HERTZ, Circuit Judge, acting as a Supreme Court Justice, concur.