STATE, Respondent v. THORPE, Appellant

(162 N.W.2d 216)

(File No. 10524. Opinion filed October 25, 1968)

**Dennis A. Brown,** of **Thurow & Thurow,** Aberdeen, for defendant and appellant.

**Frank L. Farrar,** Atty. Gen., **Walter W. Andre,** Asst. Atty. Gen., Pierre, **Roger L. Wollman,** State's Atty., Aberdeen, for plaintiff and respondent.

HOMEYER, Judge.

The defendant, Lewis Thorpe, 56 years old, was charged with the crime of indecent molestation of a minor under SDC 1960 Supp. 13.1727. He was tried by a jury, found guilty, and sentenced to eight years in the state penitentiary. He appeals from the judgment.

Appellant's principal contention is that the trial court committed reversible error in admitting certain evidence claimed to be hearsay over defendant's objection. We agree.

So far as material to the disposition of this appeal, the facts are that the victim is a 12-year-old girl who lived with her parents and a 6-year-old brother, at Hecla, South Dakota, on August 23, 1967, the date of the alleged crime. Her father, Dan Meyer, was a painter and her mother, Lorraine Meyer, often assisted him in his work. On the day mentioned they worked east of Britton and the brother was with them. The victim was left at home alone. Her father remained at the work site over night, but her mother and brother returned to Hecla that night and again the following night.

The testimony of the state fixed the time and place of the offense at approximately 4:30 p. m. at appellant's bachelor quarters located about eight blocks from the Meyer house. The facts as related by the victim, if believed, establish the essential elements of the crime charged. On the other hand, appellant denied the charge and there was supporting testimony which could raise a doubt on the credibility of the victim's story. We believe it would serve no useful purpose to relate the details of what the victim said occurred in appellant's home.

It is undisputed that the victim returned to her home about 5:15 p. m. and was visited by a girl friend for about an hour. The victim said she told her what happened, but the girl friend called as a rebuttal witness on another matter, did not testify to this fact. Besides visiting with her girl friend, she performed household duties until her mother returned home about 8 p. m. She made no complaint to her mother then or before she left for work again on Thursday morning between 10 a. m. and 10:30 a. m. The record is silent as to the victim's activities, condition and emotional status after her mother returned home on Wednesday evening and before her departure for work on Thursday morning. There is no testimony when she went to bed that evening, but she testified that she got up the next morning about 9 a. m. In response to a question as to why she said nothing to her mother and over the objection of ap-

pellant, she said: "I was scared to tell her and I wasn't sure she would believe me or not and I didn't think—well, when I tell her I thought she would be mad at me and that she would take it wrong when I tell her."

The victim testified that she told a neighbor, Rose Schulz, who lives about 2 1/2 blocks from the Meyer home about the incident the next morning (Thursday) after her mother left for work. She also testified that she told her mother about it Thursday night about 10 p. m. after she returned from work.

The state called Rose Schulz as a witness and in essence she testified that the victim came to her home between 11 and 12 on Thursday morning; that "She was crying real hard and wringing her hands. She was real upset." In response to a question: "Would you tell the * * * jury what you said to her and what she said to you" and over the objection of appellant, she related what the victim told her had occurred on the previous day at appellant's home. The victim remained with Mrs. Schulz most of the balance of that day and then they went to the Meyer home accompanied by an aunt and a neighbor couple.

Lorraine Meyer, the mother of the victim, was also called as a witness by the state. She testified that the victim was not at home when she returned on Thursday night, but arrived shortly afterwards in a car with Mrs. Schulz and her aunt; that the victim was crying and "the more she talked and told me what had happened the more she cried." In response to a question what the victim told her and over appellant's objection she in essence repeated the same details that were testified to by Mrs. Schulz.

In State v. Schultz, 41 S.D. 184, 169 N.W. 547, in a prosecution for assault with intent to commit rape where a complaint was made to a neighbor woman the day after the crime was allegedly committed, this court said the testimony of third parties is admissible to prove the fact that complaint was made, but the rule allows no further proof than that fact and possibly

proof of what was said as to the name of the guilty party.[1] "It does not permit testimony of the third party relating what the complaining witness said as to the details of the offense * * *". The court further said there is a rule of law which permits testimony of others "as to outbursts, exclamations, or declarations of an injured party * * * when such outbursts, exclamations, or declarations are so closely connected with the transaction from which the injury flowed as to make it reasonably certain that they are the unconscious or natural resultant of the injury and matters connected therewith and not made in furtherance of some concocted plan or scheme devised by the injured party." The details of the assault related by the complainant were held inadmissible under the latter rule. See also State v. McFall, 75 S.D. 630, 71 N.W.2d 299.

In rape cases, closely akin to indecent molestation, Wigmore in his treatise on Evidence, Volume IV, Sections 1134 to 1140, discusses three possible principles upon which this type of testimony concerning the event is admitted:

1. In explanation of a self-contradiction or an inconsistency. Since it is natural for a woman or child to complain to someone responsible for her welfare of an outrage of this character, the failure to complain could be urged by the defense to contradict or discredit her testimony. Because of this cases generally allow the prosecution to forestall such discrediting, or any inference derived from failure to complain, by admitting testimony of the fact of the complaint, but not the details. The testimony may come from the prosecutrix, State v. Fritz, 44 S.D. 517, 184 N.W. 235, or from third parties. State v. Schultz, supra.

2. Rehabilitation by consistent statement. The purpose of permitting the witness to testify regarding the complaint of the prosecutrix and the details of her statement is to show that she told the same story to the witness that she told on the wit-

---

1. In most jurisdictions the name of the offender as given by the victim in making her complaint cannot be shown unless it is part of the res gestae. 1 Wharton's Criminal Law, § 727, p. 989, 44 Am.Jur., Rape, §§ 84, 85, pages 954, 955. See cases in West's Digest, Rape, key 48(2)—Contra; People v. Burton, 55 Cal.2d 328, 77 Cal.Rptr. 65, 359 P.2d 433, 445.

ness stand. As a preliminary to receipt of evidence on this theory the victim must have testified and the defense must have attempted to impeach the witness. In the instant case, no impeaching evidence had been received before Mrs. Schulz or the victim's mother testified. It was offered as independent corroborative evidence.[2]

3. Spontaneous or Res Gestae Declarations. The declarations of a woman or child under the fright of a recent assault have been held admissible with all the details under the res gestae exception to the hearsay rule.

In State v. Percy, 80 S.D. 1, 117 N.W.2d 99, in a prosecution for indecent molestation of a 6-year-old boy, this court quoted with approval a statement by Professor Wigmore, Volume VI, Section 1747, set forth in State v. McFall, supra.

> "Under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock."

Under the circumstances of that case, where the statement was made the next day, we held that it should have been excluded within the rule referred to. However, in State v. Percy, 81 S.D. 519, 137 N.W.2d 888, where the charge was kidnapping, recognizing some discretion in the trial court as to the time element where the utterance is by a young child, this court held

---

2. Wigmore indicates a restrictive application of this theory in jurisdictions where permitted. He does not list South Dakota as one of the jurisdictions allowing it. In State v. Hauser, 46 S.D. 151, 191 N.W. 446, where husband of prosecutrix was permitted to testify to what she said to him upon her return at midnight immediately after the commission of the crime, the court said it was not part of res gestae and except for fact of complaint and description of her appearance and her acts on return home as res gestae it was error to allow him "to repeat her story, beyond the statement that she claimed to have been assaulted." See also State v. Murray, 46 S.D. 410, 193 N.W. 132, where mother testified to statements made by girl who was deceased. The court said her testimony was inadmissible and added: "Even if the injured girl had been living at the time of the trial and had testified in the case, the evidence given by the mother as to the details would have been inadmissible."

statements of the 6-year-old boy made to his parents two or three hours after the happening of the offense were properly admitted.

■ ■ In our opinion the age of the victim and the lapse of time between the alleged act and the complaint to Rose Schulz and to Lorraine Meyer, the victim's mother, removed the details of any conversation as part of the res gestae and the statements made were clearly inadmissible and prejudicial to appellant. If the time and other circumstances are such as to give an opportunity for fabrication or falsification such statements should not be admitted. The reason for the rule is that generally any substantial lapse of time will provide the victim with an opportunity to fabricate her story. To allow other witnesses to repeat statements made by a victim of an alleged outrage to them, unless such statements are part of the res gestae, tends to overemphasize the victim's testimony to a jury. In effect, it allows eyewitness testimony when there was none. State v. Hauser, supra.

■ We hold that the testimony of Rose Schulz and Lorraine Meyer of the fact of a complaint by the victim to them was admissible, but the details of her story were not. State v. Schultz, supra.

■ Several assignments of error pertain to exclusion of testimony which would tend to reflect on the morals of the victim. We preceive no error in the exclusion of such evidence. The character of the victim or her promiscuity was not material to the offense. State v. Shields, 81 S.D. 184, 132 N.W.2d 384. Appellant's assertion that the evidence should have been permitted as relevant to show a reason for her complaint to Rose Schulz is remote and devoid of merit.

Other miscellaneous assertions of error are either without merit or not likely to arise upon retrial.

The judgment is reversed and a new trial granted.

All the Judges concur.