**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Timothy J. DEVALL, Defendant and Appellant.**

**No. 17559.**

Supreme Court of South Dakota.

Argued March 17, 1992.

Decided July 29, 1992.

Rehearing Denied Sept. 3, 1992.

Mark Barnett, Atty. Gen., Sherri Sundem Wald, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

John P. Blackburn and Laura R. Mitchell of Blackburn & Stevens, Yankton, for defendant and appellant.

SABERS, Justice.

Devall claims his rape conviction was based on inadmissible hearsay testimony. We agree. Devall also claims character evidence was improperly admitted. We do not agree.

## FACTS

During the 1990 homecoming celebration at the University of South Dakota (U.S.D.), Tim Devall (Devall), a former U.S.D. student, saw T.L., a college acquaintance of three years at a bar in Vermillion, South Dakota. She was celebrating Dakota Days with friends. It was after midnight when they met. Both had been drinking prior to the chance meeting.

Devall and T.L. talked for about twenty minutes at the bar. During this conversation, they discovered they both intended to attend a party at the Lambda Chi Alpha fraternity. They left the bar and went to another Vermillion bar, the Charcoal Lounge (Char Bar), so that she could give her car keys to her friend, Melissa Phillips (Phillips). Prior to leaving the first bar, Devall kissed T.L. and they held hands on the way to the Char Bar. Todd Ethier accompanied them to the Char Bar.

Devall and T.L. stayed at the Char Bar for a short time before leaving for the Lambda Chi house. Todd Ethier remained at the Char Bar. After walking for about ten minutes, Devall kissed T.L. She kissed him back. Devall unbuttoned her pants and attempted to unzip them. She said "no," that she didn't want to do that and refastened her pants. Devall kissed her again and unzipped her pants. Despite more protests, Devall yanked her pants down to her ankles before she was able to redo them. Devall pushed her to the ground and jumped on top of her. He pinned her arms back and she was unable to kick because her pants were around her ankles. However, she continued to struggle and tell Devall "no." Devall told her that if she did not have sex with him, he would tell her friends that she did. Devall then spread her knees and thighs apart and forcefully raped her for approximately one minute. T.L.'s testimony was that she be-lieved Devall stopped due to a tampon in her vagina.

When Devall stopped, he got up and instructed her to pull up her pants. He grabbed her wrist and began to pull her towards the apartment of his friend, Jeff Johnson. As they reached the apartment building, T.L. tripped and fell over a mound of dirt. As a result of this fall, she cut her hand and bruised and scraped her ankle. Believing Devall would hurt her more, she did not cry out or scream for help during the rape or enroute to Johnson's apartment.

Johnson, Sue Chopskie (Chopskie) and another woman were present when T.L. and Devall entered the apartment. Despite her prior acquaintance with Johnson and Chopskie, T.L. did not tell them about the rape or acknowledge their presence while at the apartment. She later testified that she was distraught and did not feel that Devall's friends would help her. T.L. merely asked for some hydrogen peroxide to clean her hand. Johnson told her that he did not have any, so T.L. went to the bathroom to wash her hand. Upon leaving the bathroom, T.L. went to one of the bedrooms to lie down. Johnson went in and asked her to leave that room because she had dirt and leaves on her back. T.L. went to another bedroom and laid down. After half an hour, Devall told her to leave. He grabbed her arm, pulled her to the door and she left.

T.L. went to the Lambda Chi house where she met her friend Jill Groseclose (Groseclose). It was around 3:00 a.m. Crying and shaking, she told Groseclose what had happened. T.L. then asked if Melissa Phillips (Phillips) or Mike Koch (Koch) were there. Groseclose told her to lie down and she would look for them. T.L. laid down and fell asleep. Phillips woke her later that morning at 9:00 a.m. T.L. gave Phillips a ride to work. Phillips asked her why her clothes were dirty, but T.L. only said "something bad happened" the previous night and she would explain later. T.L. went home to bed and was later awakened by Katie Feuerstein (Feuerstein). She told Feuerstein that she had been "as-

saulted" by Devall. Feuerstein urged her to go to the police and to the hospital. T.L. refused because she did not believe they would treat her fairly.

Later that morning, she and Feuerstein went to the Kappa Alpha Theta sorority house to meet Shelly Aasen (Aasen). T.L. told Aasen that she had been raped by Devall. She and Feuerstein then went to the Char Bar to meet with Phillips and Koch. Phillips again asked T.L. what had happened and T.L. then told her that Devall had raped her.

That afternoon, T.L. told Koch that Devall had raped her. She also explained to Feuerstein that the "assault" by Devall had been a rape. Koch and Phillips encouraged her to report the rape to the police. That evening, she reported the incident to the Vermillion Police Department. Detectives Larry Gray (Gray) and Ray Hoffman (Hoffman) brought her to the hospital and investigated the report.

Gray met with Devall the next day, October 21, 1990. Devall waived his Miranda rights and told Gray that he and T.L. did not have sex at Johnson's apartment the morning of October 20. Gray told Devall that he was investigating the reported rape of T.L. which occurred prior to arriving at Johnson's apartment. Devall said that any contact which occurred was consensual and again denied having sex with T.L. at Johnson's apartment. Devall prepared a written statement to this effect. On October 25, 1990, Devall became upset when he found out the case had been turned over to the state's attorney's office. Devall then stated to Gray that he and T.L. did have sex at Johnson's apartment.

Devall was indicted on one count of first-degree rape. The jury found him guilty. Devall appeals, claiming the court erred in allowing six witnesses to testify to hearsay statements made by T.L. and in allowing three rebuttal witnesses to testify to Devall's reputation for truthfulness.

1. T.L. did not discuss the rape with Rausch until Sunday, the day after she reported it to the police.

## ADMISSIBILITY OF HEARSAY EVIDENCE.

Devall claims the court erred in allowing six witnesses to testify to hearsay statements by T.L. We review evidentiary rulings on the basis of abuse of discretion:

> 'For us to disturb the evidentiary rulings of the circuit court, we must determine that an abuse of discretion has occurred. Once again, an abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.'

*State v. Pfaff,* 456 N.W.2d 558, 561 (S.D. 1990) (quoting *State v. Bartlett,* 411 N.W.2d 411, 414 (S.D.1987)); *see also State v. Floody,* 481 N.W.2d 242, 250 (S.D.1992). Devall claims that the testimony of Groseclose, Aasen, Phillips, Koch, Kristie Rausch[1] and Feuerstein was inadmissible hearsay. He claims he was unfairly prejudiced because the trial court's ruling turned a matter of credibility between himself and T.L. into one between himself and T.L. and six other witnesses who were merely repeating T.L.'s version of the facts. State claims the testimony of these witnesses was admissible as excited utterances, to prove the fact complaint was made, or as prior consistent statements.

### 1. *Excited Utterance.*

State argues that the testimony of these witnesses is admissible under the excited utterance exception, SDCL 19–16–6:

> A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition, is not excluded by § 19–16–4, even though the declarant is available as a witness.

T.L. told Groseclose what happened to her within an hour after leaving Devall. T.L. did not talk to the others until after waking up later that morning or after a later nap. Clearly her comments to the others were more a product of reflective thought than an excited reaction to the incident. This is illustrated by T.L.'s first comments to Phil-

lips that "something bad happened" and that T.L. would tell her the details later. Therefore, there is no showing that these later statements were made while T.L. was under the stress of excitement caused by the event or condition. Although the statements to Groseclose may be admissible as an excited utterance, the statement to Feuerstein, and those to the other four witnesses, were not. SDCL 19–16–4 and 6. *See Floody,* 481 N.W.2d at 250.

### 2. *Fact of Complaint.*

■ Generally, the testimony of a witness cannot be bolstered or supported by showing that a witness made similar statements out of court in harmony with her testimony on the stand. M. Graham, Handbook of Federal Evidence § 801.12, at 760 (3rd ed. 1991). There is an exception to this rule in rape cases which permits testimony to prove complaint was made.

> 'Since it is natural for a woman or child to complain to someone responsible for her welfare of an outrage of this character, the failure to complain could be urged by the defense to contradict or discredit her testimony. Because of this[,] cases generally allow the prosecution to forestall such discrediting, or any inference derived from failure to complain, by admitting testimony of the fact of the complaint, but not the details.'

*State v. Thorpe,* 162 N.W.2d 216, 218 (S.D. 1968) (quoting J. Wigmore, 4 Wigmore on Evidence, §§ 1134–1140 at 297–314.)). *See also State v. Twyford,* 186 N.W.2d 545, 548 (S.D.1971); *State v. Schultz,* 41 S.D. 184, 169 N.W. 547, 549 (1918).

> [T]he testimony of third parties is admissible to prove the fact that complaint was made, but the rule allows no further proof than that fact and possibly proof of what was said as to the name of the guilty party. 'It does not permit testimony of the third party relating what the complaining witness said as to the details of the offense * * * '.

*Thorpe,* 162 N.W.2d at 217 (quoting *Schultz,* 169 N.W. at 549) (footnote omitted).

■ All of these witnesses testified to the fact that T.L. complained to them that she had been "assaulted" by Devall. Since Groseclose testified only to that extent, her testimony clearly falls within this exception. Feuerstein was the next to be told what happened.[2] Therefore, a portion of her testimony also falls within this exception.

■ As noted above, portions of the remaining witnesses' testimony may also be admissible under this exception. Whether the probative value of relevant evidence has been substantially outweighed by the danger of unfair prejudice due to its cumulative nature is within the discretion of the trial court. SDCL 19–12–3 (Fed. R.Evid. 403); *Stormo v. Strong,* 469 N.W.2d 816, 824 (S.D.1991); *State v. Cady,* 422 N.W.2d 828, 829 (S.D.1988); 6 Wigmore on Evidence § 1908 at 759–760 (Chadbourn rev. 1976). The rape complaint exception is limited to testimony that in fact complaint was made, *not* to show the truth of the matter asserted. *See Twyford,* 186 N.W.2d at 549 (citing *State v. Grady,* 183 N.W.2d 707, 713 (Iowa 1971)); *see also State v. Griffin,* 386 N.W.2d 529, 535 (Iowa App.1986); *State v. Stevens,* 289 N.W.2d 592, 595 (Iowa 1980). 4 Wigmore on Evidence § 1136 at 307. Devall did not attack the fact or the timing of T.L.'s complaint. Therefore, the testimony of Groseclose and Feuerstein was adequate to show that complaint was in fact made.

■ Feuerstein's remaining testimony included far more detail about the rape than the fact of complaint. The question then is whether the admission of these additional details from Feuerstein is still within this rape complaint exception. Feuerstein testified T.L. complained that Devall "raped" her. This testimony encompasses the heart of the rape complaint exception—i.e. the complaint and the identity of her attacker. All additional specific de-

---

**2.** Phillips saw T.L. between the time Groseclose and Feuerstein did, but was only told that "something bad happened." She was not given any details about the incident until later that day.

tails fall outside this limited exception for corroboration of the complaint. "Any further terms of her utterance are not only immaterial for the purpose of corroboration, but practically turn the statement into a hearsay assertion[.]" *Grady*, 183 N.W.2d at 716. Likewise, any probative value of the testimony of the remaining witnesses was substantially outweighed by its prejudicial cumulative nature, which in effect went to the truth of the matter asserted.[3] SDCL 19–12–3. The court erred and abused its discretion by admitting their testimony under this exception. Therefore, the remaining testimony by Feuerstein and the testimony of the remaining witnesses was hearsay which must fit under a hearsay exception to be admissible.

### 3. *Prior Consistent Statement.*

▆▆▆▆ The next question is whether the testimony of the other witnesses is admissible under the prior consistent statement exception to the hearsay rule. SDCL 19–16–2 provides in part:

> A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is

> . . . .

> (2) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]

The three-part test for admission of prior consistent statements provides:

> Before a prior consistent statement will qualify as nonhearsay under the rule, the proponent must demonstrate three things. *First,* he must show the prior consistent statement is consistent with the witness' in-court testimony. *Second,* he must establish that the statement is being used to rebut an express or implied charge against the witness of recent fabrication or improper motive or influence. *Finally,* the proponent must demonstrate that the prior consistent state-

ment was made prior to the time the supposed motive to falsify arose.

*State v. Thompson,* 379 N.W.2d 295, 296 (S.D.1985) (emphasis added); *see also State v. Ager,* 416 N.W.2d 871, 872 (S.D.1987); *State v. Carlson,* 392 N.W.2d 89, 91 (S.D. 1986).

The reason for excluding prior consistent statements is that they are irrelevant unless the witness' credibility has been attacked. *Thompson,* 379 N.W.2d at 297.

> Since rule 801(d)(1)(B) provides that the prior consistent statement may be accorded substantive use only if it is used to *rebut* an express or implied charge, impeachment of the witness is a precondition. (Emphasis in original).

4 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 801(d)(1)(B)[01], at 801–190–192 (1991). Therefore, SDCL 19–16–2(2) requires impeachment of the witness as a precondition to admissibility. *Kaarup v. Schmitz, Kalda and Associates,* 436 N.W.2d 845, 848 (S.D.1989).

> Evidence that merely shows that the witness said the same thing on other occasions when his motive was the same does not have much probative force 'for the simple reason that mere repetition does not imply veracity.'

*Weinstein,* ¶ 801(d)(1)(B)[01], at 801–188–189. *See also Ager,* 416 N.W.2d at 873; *Carlson,* 392 N.W.2d at 91.

T.L.'s statements to the six witnesses were not offered to rebut an express or implied charge of recent fabrication or improper influence or motive, but were offered as substantive evidence in the state's case-in-chief. This evidence fails to meet the second part of the *Thompson* test; thus, it does not come within the prior consistent statement rule. Therefore, for all of the reasons stated above, the admission of this evidence was prejudicial error and we reverse and remand for a new trial.

### REBUTTAL WITNESSES.

▆▆▆ Devall claims the court erred in allowing three rebuttal witnesses to testify

---

**3.** It is noteworthy that the trial court appropriately reached this same conclusion with respect

to the additional detailed testimony of the sixth witness, Kristie Rausch.

to his reputation for truthfulness. Devall failed to object to the admissibility of this testimony at trial and failed to preserve this issue for appeal. *State v. Dornbusch,* 384 N.W.2d 682, 686 (S.D.1986). Despite his failure to preserve this issue, he argues that the admission of this evidence rises to the level of plain error. We reach this question only to provide the trial court guidance on remand.

 The plain error rule allows this court to consider on appeal errors that are so substantial and obvious that they rise to the level of "plain error" even though not preserved or raised. SDCL 23A–44–15. However, this rule will be applied "only in exceptional cases, and then it must be applied cautiously." *Dornbusch,* 384 N.W.2d at 686 (quoting *State v. West,* 344 N.W.2d 502, 504 (S.D.1984)). We do not believe the admission of this rebuttal testimony was "plain error" or even error.

The testimony of Ryker Lammers (Lammers), Lance Bergesen (Bergesen) and Michelle Roberts (Roberts) was limited to their opinion of Devall's reputation for truthfulness in the community. Under SDCL 19–14–9:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:
>
> (1) The evidence may refer only to character for truthfulness or untruthfulness[.]

*See State v. Tribitt,* 327 N.W.2d 132, 135 (S.D.1982). Therefore, this testimony was clearly admissible. Devall argues that, by the use of three witnesses, the evidence was cumulative and prejudicial and should have been excluded under SDCL 19–12–3.[4] The balancing of the probative value of the evidence against the risk of unfair preju-

dice is within the discretion of the court. *State v. No Heart,* 353 N.W.2d 43, 48 (S.D. 1984). As noted above, these witnesses testified only to Devall's reputation for truthfulness. Although testimony from three witnesses on this issue may tend to be cumulative, we are not prepared to say it was an abuse of discretion.

Therefore, we reverse and remand for a new trial consistent with this opinion.

AMUNDSON, J., concurs.

HENDERSON, J., specially concurs.

MILLER, C.J., and WUEST, J., dissent.

HENDERSON, Justice (specially concurring).

In concurring, it is incumbent upon this writer, to add some relevant facts [*]:

1. Victim admitted, at trial, she was intoxicated, that her memory was faulty, and she was unable to remember what happened.

2. Victim testified she wanted to "forget it" (the alleged rape) but was persuaded by friends to prosecute Devall.

3. At issue was: Did Devall rape victim? Six witnesses testified at trial not simply that Devall raped victim, but at least four of them testified to details:

 (a) Devall forced her on the ground, raped her after she said "No;"

 (b) Devall pushed her on a lawn, pulled her pants down, and raped her after she said "No;"

 (c) Devall pushed her down, pulled off her pants and raped her;

 (d) Devall attacked her, pushed her down, and raped her.

---

4. SDCL 19–12–3 states:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[*] Majority opinion has six full paragraphs setting forth the state's version of the facts; it skews the facts very favorably for the victim's version and extremely unfavorable for Devall. If the reader

accepts all of these facts and the statements of the hearsay witnesses as truth because alleged victim said this happened, the reader is overcome with a belief that alleged victim was brutalized. Only the alleged victim and her consort that night had a recollection (of sorts) in their alcohol clouded minds. There appears to be at least 5 to 6 hours of consumption of liquor; the "rape" was preceded by both kissing and hugging, according to Devall. Victim denied this.

Thereby, each statement of these four witnesses, plus the other two, were received as evidence before the jury, postured in this vein: That what the victim said as a fact to them—was indeed a fact. This appears to be an abuse of discretion in receiving such evidence when the victim testified at trial that she was intoxicated and unable to recall what happened. When reviewing the admission of evidence, this Court will disturb the decision of the trial court only upon a showing of an abuse of discretion. *State v. Bawdon*, 386 N.W.2d 484, 486 (S.D.1986). Certainly these witnesses should not be able to elevate the out-of-court hearsay statements above her own testimony at trial. For these witnesses to testify as to the details of the alleged rape, was an obvious attempt, by the prosecution, to reinforce the rape charge, the details of which seem to escape the victim when she testified before the jury. In most jurisdictions, the name of the offender cannot be related by the alleged victim when making a complaint, unless it is established that it is a part of the res gestae. 1 Wharton's Crim.Law, § 727 p. 989 (1981); 44 Am.Jur., Rape, §§ 84, 85, pgs. 954, 955. A tenuous recollection was bolstered by inadmissible hearsay evidence. Obviously, having six witnesses testifying, as if they were eyewitnesses, prevented Devall from having a fair trial. An "impartial" trial is equated with a "fair" trial under our State Constitution, Art. VI § 7. *State v. Lapke*, 61 S.D. 389, 249 N.W. 634 (1933). Each one of these six witnesses testified in the state's case-in-chief. *They were actually not witnesses at all.* They were witnesses to what someone told them. But, unfortunately, all six sat in the witness chair.

### EXCITED UTTERANCE

State would rely upon *Bult* and *Logue*. These cases are distinguishable. In *Bult*, victim was a 5 year old boy; in *Logue*, victim was a four year old boy. Via *State v. McCafferty*, 356 N.W.2d 159, 161 (S.D. 1984), this Court has relaxed, nay cut back, the rigid time and spontaneity requirements when statements are made by very young children. Here, we have a college girl, partying into the earlier hours of the morning, allegedly hugging and kissing a male acquaintance during the evening, leaving a downtown bar to party further at a fraternity house, and who, between 2 and 17 hours after the alleged rape, makes so called excited utterances; and, also, a college girl, who is a full grown adult, who went to sleep after the alleged rape. Upon arising, after a third "nap," she showered and went back to bed. Upon awaking, she went out for breakfast and went to her sorority house. Other than a statement to Jill Groseclose, approximately an hour and a half after the alleged rape, *all* statements to the hearsay witnesses were after time had passed and an opportunity presented itself in her mind to contrive, or at least, misrepresent the situation. Perhaps, also, to favorably reconstruct the events of the evening, upon sobering up. Such a mental reconstruction would not be novel to mankind. In other words, sufficient time had evolved where her statements were not excited utterances. Under *State v. Younger*, 453 N.W.2d 834, 839 (S.D.1990) and *State v. Swallow*, 405 N.W.2d 29, 34 (S.D.1987) her statements were not excited utterances, allowable as evidence, as an exception to the hearsay rule.

### CUMULATIVE EVIDENCE

### FAILURE TO WEIGH

SDCL 19–12–3 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Assuming arguendo, that the state is right; assume, conceptually, that these six witnesses' testimony was valid based upon the excited utterance rule. Should we not recognize the above statute? Why *6* witnesses; surely, same is cumulative evidence. In *Stormo v. Strong*, 469 N.W.2d 816, 824 (S.D.1991) we expressed that cumulative evidence was "evidence of the same character *as evidence previously produced*

*which supports the same point.* Here, this "relevance" by a 6 witness approach, was substantially outweighed by the danger of *unfair prejudice.* Nor was there any balancing on the record as this Court has required under *State v. Klein,* 444 N.W.2d 16, 19 (S.D.1989). *See also, State v. Thomas,* 381 N.W.2d 232, 240 (S.D.1986). We have repeatedly cautioned and advised the trial courts of this state that a balancing on the record must be done. Thus, a 6 witness parade, hearsay-approach was a painful, evidentiary procedure likened unto the Chinese torture method, that one drop of water on the forehead will not deprive you of your sound psyche but many, successive drops will. Collectively, the 6 witness approach, like the drops of water, took their toll on "a fair trial." Clearly, the error here was not "harmless." SDCL 23A–44–14 defines harmless error as "Any error, defect irregularity or variance which does not affect substantial rights [and] shall be disregarded." "Prejudicial" error is "error which in all probability must have produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it." This parade of hearsay witnesses, obviously, had "some effect" upon the outcome of the trial. *State v. Michalek,* 407 N.W.2d 815, 818 (S.D.1987).

### REBUTTAL WITNESSES

Having orchestrated the song, "Tell It To Me One More Time," with 6 hearsay witnesses, state was not done. Having over-killed, the burial rite rubric must be performed; so, 3 rebuttal witnesses were called to convince the jury that this young man simply could not tell the truth. Thereby, understand, his defense that he and his coed partner, (both drinking intoxicants for hours, and supposedly partying, kissing, hugging) voluntarily shared in sexual intercourse was devastated; perforce, the conclusion was foisted upon the jury that she could not have consented to sex for, obviously, he was incapable of testifying truthfully. A bass drum for the state; a piccolo for the defendant. Again, unfairness. Devall did not preserve the record for his counsel failed to timely object; under *State v. Huftile,* 367 N.W.2d 193, 195 (S.D.1985), his right to object is waived. With the majority opinion on this point I agree. And, frankly, I question that it was "plain error." We are to apply said rule cautiously. *State v. Brammer,* 304 N.W.2d 111 (S.D.1981). So having expressed twice, that this issue should not be addressed, the majority proceeds to so do. Inasmuch as the majority does, my opinion is that the three rebuttal chariot harnesses too many horses charging on a ride of "he cannot tell the truth!" In the context of one on one testimony ("you forced me;" "I didn't—you consented"), three witnesses create cumulative evidence. Two witnesses, after the first witness, is "evidence previously produced which supports the same point." *Stormo* at 824. Admission of evidence from 3 veracity witnesses unfairly shifts a judgment of credibility in favor of one participant and against the other participant.

### INTROSPECTION

In the celebrated works of THE PROPHET, by Kahlil Gibran, 25th printing, November, 1983, published by Alfred A. Knopf, Inc., page 38, it is written:

And let him who would lash the offender, look unto the spirit of the offended.

And if any of you would punish in the name of righteousness and lay the axe unto the evil tree, let him see to its roots;

And verily he will find the roots of the good and the bad, the fruitful and the fruitless, all entwined together in the silent heart of the earth.

My Sisters and Brothers of the Law: In the fullness of light, not in the hours of darkness and alcohol and revelry, what was the spirit of this college couple? If you would lay the axe unto the evil tree, would you not look and attempt to perceive the roots? Where, here, is the measure of right or wrong? To understand justice, should not the deeds of the night (darkness) be measured, upon reflection, in the fullness of the day (light)? Perhaps this young college couple, caught up in the excitement of Homecoming, at our State University, should look upon themselves inwardly; and temporary celebration and

merriment were shared, not to be later adjudged, on one part, the guiltless and, on the other part, the blamed. Perhaps this night was but the fragment of each party's own self. A jury will have to sort out the facts and judge the credibility of the parties; a new trial, must be fair, to insure deciding the ultimate issue of rape or consent to the sex act. *State v. Minkel*, 89 S.D. 144, 230 N.W.2d 233 (1975). I am convinced that Devall did not have a fair trial and join the majority opinion. This dissertation on "INTROSPECTION" is not to suggest that any college coed or other woman does not have the right to say "No," when the male attempts to physically overcome her resistance.

MILLER, Chief Justice (dissenting).

The majority writing finds that only one of State's witnesses' testimony falls under the "excited utterance" exception to the hearsay rule. I disagree.

In *State v. Logue*, 372 N.W.2d 151, 158 (S.D.1985), we quoted with approval from *State v. Bult*, 351 N.W.2d 731, 736 (S.D. 1984):

> Lack of capacity for fabrication rather than lack of time to fabricate is the justification for this rule, and there is no pat answer as to the length of time that elapsed between the event and the utterance. The character of the transaction or event will largely determine the significance of the time factor. 'The crucial point is that the court must be able to find that the declarant's state at the time [she] made the declaration ruled out the possibility of conscious reflection.'

Citing Weinstein's Evidence § 803(2)[01] at 803–91 (1991).

Thus, while the amount of time which has elapsed between the event and the statement should be considered, *it is not determinative. Logue*, 372 N.W.2d at 159; *State v. Percy*, 80 S.D. 1, 7, 117 N.W.2d 99, 102 (1962). "Whether an utterance was made under the influence of the event must be determined on the basis of the circumstances in each case." *Id.*

Here, we are presented with testimony from T.L.'s friends who she spoke with about the rape. T.L. spoke to Groseclose shortly after the rape. This testimony undisputedly falls within the excited utterance exception. During this conversation, T.L. was still crying and shaking. T.L. fell asleep shortly thereafter, at approximately 3:00 a.m. She was awakened the next morning, at 9:00 a.m., by Phillips, who asked her why her clothes were dirty. T.L. responded "something bad happened." T.L. then went home and went to bed. Feuerstein, who was staying with T.L. that weekend, testified that T.L. acted strangely when she came home. T.L. went directly to bed without speaking with Feuerstein. Later that morning, T.L. told Feuerstein that Devall had pushed her down and attacked her. That night at 5:30 p.m., T.L. explained to Feuerstein in detail what had happened to her. T.L. was shaking when she explained to Feuerstein what had happened.

In *Bult*, we held that a statement is admissible if the declarant is "under the stress of excitement." 351 N.W.2d at 736. "[T]here are two aspects to this requirement: (1) the judge must find that because of the event the declarant was excited and (2) that [she] still was excited when [she] made the statement." *Id.*

In my opinion, the testimony from Groseclose, Phillips, and Feuerstein all falls within the "excited utterance" exception. Considering the serious and emotional nature of the crime of rape, it certainly could be expected that someone would remain traumatized and under the "stress of the event" for several hours.

As to the other three witnesses, I believe their testimony was cumulative and thus constituted harmless error. This court expressed in *State v. Younger*, 453 N.W.2d 834, 839 (S.D.1990):

> 'We also note that when evidence admitted at trial is cumulative only and other admissible evidence supports conviction, the cumulative evidence though inadmissible is not prejudicial.'

Quoting *State v. Fender*, 358 N.W.2d 248, 254 (S.D.1984).

WUEST, Justice (dissenting).

I would affirm. As Chief Justice Miller points out in his dissent, the precedent in this Court, *State v. Bult*, 351 N.W.2d 731 (S.D.1984) and *State v. Logue*, 372 N.W.2d 151 (S.D.1985), holds time alone is not the controlling factor. Rather, the crucial consideration is whether the declaration made resulted from conscious reflection. Since the facts of every case will be different, we must give great deference to the decision of the trial judge. For this reason, a trial court may not be reversed, except for an abuse of discretion. Here, the trial court did not abuse its discretion because it could reasonably conclude the victim's statements to the three witnesses, Groseclose, Phillips and Feuerstein, were not the result of conscious reflection. *See also, State v. Brings Plenty*, 490 N.W.2d 261, 268 (S.D. 1992).

The majority cites *State v. Floody*, 481 N.W.2d 242 (S.D.1992) for authority to reverse. As the author of *Bult, Logue* and *Floody*, it is my opinion the majority is wrong. We did not hold the trial court abused its discretion by admitting the statements in *Floody*. We said we were hesitant to rule those statements came within the excited utterance exception when "the length of time between the startling event and the statement is unknown." We also pointed out the stress evident in *Floody* was not from the exciting event, but from recounting the event. *Id.* at 250. However, we went on to say, because the statements were properly admitted pursuant to the tender years statute, any error was harmless. Thus, we did not, in fact, decide the excited utterance issue.

Finally, I agree with the Chief Justice the testimony of the other three witnesses was merely cumulative and, as such, does not constitute prejudicial error. I respectfully dissent.