2004 SD 57

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Timothy Wayne MIDGETT, Defendant and Appellant.**

No. 22857.

Supreme Court of South Dakota.

Considered on Briefs March 22, 2004.

Decided April 28, 2004.

Lawrence E. Long, Attorney General, Frank Geaghan, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Reed Rasmussen of Siegel, Barnett and Schutz, Aberdeen, South Dakota, Attorneys for defendant and appellant.

ZINTER, Justice.

[¶ 1.] Timothy Midgett was convicted of second degree rape. He appeals[1] his conviction and the denial of a motion for new trial. We reverse and remand.

**Facts and Procedural History**

[¶ 2.] The incident in dispute occurred on March 14, 2002, when K.R.B. was at the apartment of a friend named S.A. K.R.B. planned to stay overnight watching movies, TV, and listening to music. S.A. lived with her mother and brothers on the top floor of the apartment building. Midgett lived on the bottom floor of that same apartment building. Both S.A. and K.R.B. had met Midgett before. Midgett often visited S.A.'s apartment to use their phone or borrow movies.

[¶ 3.] From this point, Midgett's and K.R.B.'s versions of the events differ markedly. K.R.B. testified that she first saw Midgett around 7 p.m. that evening when he came to S.A.'s apartment to borrow movies. K.R.B. saw Midgett a second time when he returned to S.A.'s apartment for other movies. K.R.B. testified that the final encounter occurred around 11 p.m., when S.A. and K.R.B. were getting ready for bed. S.A. allegedly asked K.R.B. to go down to Midgett's apartment to retrieve the movies.

[¶ 4.] K.R.B. went to Midgett's apartment. According to K.R.B., when Midgett opened the door, she asked him for the movies, and Midgett insisted that K.R.B. come in. K.R.B. testified that she said no, but Midgett gave her "a shove on the shoulder, a light shove" into the apartment and shut the door. K.R.B. asked Midgett for the movies again, and he told her that he had some in his bedroom. K.R.B. asked Midgett for the movies so she could leave. Midgett, however, told her to "just come and get 'em" and gave her another

---

**1.** Appellate counsel was not Midgett's attorney at trial.

light shove. K.R.B. testified that she followed Midgett into his bedroom and was forcibly raped.

[¶ 5.] S.A.'s mother immediately called the police when K.R.B. returned from Midgett's apartment. Law enforcement arrived and commenced an investigation. K.R.B. was taken to the hospital and examined in the emergency room. A doctor determined that there was physical evidence consistent with sexual activity within a fairly recent period of time. Testing specimens from a "rape kit" revealed no evidence of semen or saliva. Midgett's boxer shorts and his sheets also revealed no blood, hairs, or fluids.

[¶ 6.] Midgett was interviewed by the police as a part of this investigation. Midgett's version of the events was quite different from K.R.B.'s. He denied having any sexual relations with K.R.B. He did, however, allege that when K.R.B. came to his apartment, she moved to the bed and told him that she came down to give him sex. Midgett then told Detective Duven that K.R.B. had instructed Midgett to get a condom, but when he got up to look for one, K.R.B. "disappeared." Duven testified that Midgett wondered "how the heck she got out of [the] apartment without him knowing it."

[¶ 7.] At trial, in an attempt to discredit K.R.B., Midgett claimed to have been involved in a prior sexual relationship with her. Midgett claimed that their relationship resulted in a pregnancy and abortion. He contended that the alleged abortion gave K.R.B. "a motive to have revenge, to fabricate a story."

[¶ 8.] The jury found Midgett guilty of second degree rape. He appeals, raising the following issues for review:

1. Whether the trial court erred in allowing the jury, during its deliberations, to view a videotaped interview of Midgett that was neither played during trial nor admitted into evidence.

2. Whether the trial court erred in admitting K.R.B.'s statements made to law enforcement officers in their investigation.

3. Whether the trial court erred in admitting a bloodstained tissue when the source of the blood was not determined in a timely manner.

4. Whether the trial court erred by admitting photographs of children's clothing taken in Midgett's residence.

## Analysis and Decision

[¶ 9.] **1. Whether the trial court erred in allowing the jury, during its deliberations, to view a videotaped interview of Midgett that was neither played during trial nor admitted into evidence.**

[¶ 10.] After Midgett's apartment was searched, he was taken to the police department and interviewed. The interview was videotaped, and both parties' positions on the admissibility of the videotape changed during trial.

[¶ 11.] Before any evidence was presented, Midgett took the position that the videotape, with a small redaction, should be shown to the jury rather than allowing Detective Duven to testify about Midgett's statements. The State, however, told the court that it did not intend to introduce the tape as evidence. The trial court subsequently prohibited admission of the videotape. However, the court ruled that "if the defendant makes a decision to testify and is subject to cross-examination about what he said on the tape then I don't think there's any issue as to the tape being admitted into evidence or played for the

jury." [2]

[¶ 12.] During Detective Duven's testimony in the State's case-in-chief, and over Midgett's objection, Duven was permitted to testify to Midgett's statements on the videotape. Duven also testified that the videotape would corroborate his testimony and that the tape was the best evidence of the statements. The State, however, continued to object to the introduction of the tape unless Midgett testified.

[¶ 13.] After Duven testified, the parties had another exchange concerning the videotape. Midgett offered it into evidence, and the State again objected. As it did before, the court ruled that the videotape could not be shown to the jury unless Midgett testified.

[¶ 14.] After Midgett did testify, he unexpectedly changed his position on the admissibility of the videotape. Although the State indicated that it would no longer object to its admission if Midgett wanted to offer the tape as evidence, Midgett asked for time to re-consider this offer. When the proceedings resumed the following day, Midgett changed his position and informed the court that he no longer wished to have the tape played.

[¶ 15.] However, during Midgett's cross-examination, he testified inconsistently with statements on the videotape: specifically, Midgett denied telling Duven that he had never had sex with K.R.B. prior to the day of the alleged offense. Consequently, Duven was recalled to rebut

this denial. As a part of that rebuttal, the State asked to play two portions of the videotape reflecting Midgett's denial of previous sexual relations with K.R.B. As a part of this offer, the entire videotape was marked as "Exhibit 4," but "Exhibit 4" was not admitted into evidence. Instead, the parties engaged in the following discussion only agreeing to display "portions" of the tape to the jury:

STATE: Detective Duven, I'm showing you what's been marked as State's Exhibit 4 for identification, do you recognize this?

DUVEN: Yes, I do.

STATE: What is it?

DUVEN: It's a videotape of my interview of Tim Midgett.

STATE: And at this time, Your Honor, we'd like to play portions of the videotape. We have no objection if defense counsel would like to show all of the videotape. But we have a couple of portions we'd like to show the members of the jury.

COURT: Is there any objection to the admission of the videotape at this time?

MIDGETT: No, Your Honor.

STATE: In which form, Randy?

MIDGETT: Just portions.

Following this discussion, no formal ruling was made admitting "Exhibit 4." However, there is no dispute that only the two rebuttal portions then at issue were actually displayed to the jury.[3]

---

2. This ruling is not an issue on appeal. We express no opinion on it.

3. The State suggests that Midgett's agreement to admit "just portions" may have been intended to mean that all of the videotape was admitted, excepting only "the portions" that were *earlier* agreed to be redacted. We disagree. First, we note that there was no trial court ruling admitting "Exhibit 4" in its entirety. Second, the State has conceded on

appeal that there was a "misunderstanding by the trial court" in believing that it had admitted the entire exhibit. Third, there is no dispute that only the two rebuttal portions were actually displayed to the jury. Finally, the jury itself understood that only part of the videotape had been admitted. The jury's note asking for the entire videotape acknowledged that "the State did not bring it up or 'admit it' into court[.]"

[¶ 16.] After both sides had rested, and after four and one-half hours of deliberation, the jury asked to see the "whole videotape." Midgett objected, stating that he "would object to the showing of the tape to the jury other than the parts that were actually published to the jury at the time that the trial was going on." The trial court, however, incorrectly ruled: "it does appear to the [c]ourt that the tape and I believe it was Exhibit 4 was admitted into evidence in its entirety." Therefore, the court permitted the jury to view the entire tape, without comment from any party, witness or attorney.

[¶ 17.] In permitting the jury to view the videotape, the trial court relied on *State v. Smith*, 1998 SD 6, 573 N.W.2d 515. However, *Smith* is inapposite. In *Smith*, a videotaped statement of a defendant was *admitted* into evidence during trial and was taken to the jury room as an exhibit. Because there was no tape player in the jury room, the jury asked for equipment to view the videotaped statement during its deliberations. We held that a *properly admitted* videotape of a defendant's statement could be replayed during jury deliberations.

[¶ 18.] Midgett's case is readily distinguishable. Although *Smith* "permits a jury to replay videotaped confessions during deliberations[,]" it must be *properly admitted* videotape evidence. *Id.* ¶ 19. In Midgett's case, only two small portions of the videotape were admitted into evidence. Therefore, under *Smith,* only the two "properly admitted" portions of Midgett's videotape could have been replayed for the jury in its deliberations. It was an error of law to permit the jury to review other videotape evidence that had never been admitted. *See id.* ¶ 18 (noting that SDCL 23A–25–7 only permits a jury to take exhibits "which have been received as evidence in the case" into deliberations).

[¶ 19.] The State, however, argues that there was no error in showing the entire tape under the "doctrine of completeness." *State v. Beynon,* 484 N.W.2d 898, 904 (S.D.1992). As we noted in *Beynon,* SDCL 19–9–13 (Fed R Evid 106) provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to *introduce* any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." *Id.* (emphasis added). Here, however, the remaining portions of the videotape were never *introduced into evidence* to explain the two admitted portions. Therefore, while Rule 106 and the doctrine of completeness may have permitted the *introduction* of the entire videotape during the trial, such an introduction never occurred. Because the introduction of the remaining portions of the videotape never occurred, the remaining portions could not have been considered by the jury under the doctrine of completeness.

[¶ 20.] The State finally argues that Midgett has not shown prejudice from the jury's consideration of this non-admitted evidence. We disagree. We first note that this case turned on K.R.B.'s and Midgett's credibility. We also note that the non-admitted portions of the videotape were highly prejudicial. This evidence was prejudicial because it had "the capacity to persuade by illegitimate means." *State v. Knecht,* 1997 SD 53, ¶ 12, 563 N.W.2d 413, 419 (citations omitted). It included Midgett's statements admitting lust, the use of pornography, and sexual arousal. It also included statements: that Midgett was the prime suspect; that there was blood on his sheets (even though there was trial evidence to the contrary); that Midgett agreed with Duven that K.R.B. had been forcibly raped; that a doctor

concluded K.R.B. was forcibly raped; and Duven's opinion that Midgett was lying. Significantly, Midgett had no opportunity to explain or even comment upon any of this highly incriminatory evidence. Allowing the jury to consider such non-admitted evidence was prejudicial error that requires reversal.

[¶ 21.] **2. Whether the trial court erred in admitting K.R.B.'s statements made to law enforcement officers in their investigation.**

[¶ 22.] Although we reverse on issue one, we discuss issue two for guidance on remand.

[¶ 23.] K.R.B. was the State's first witness. She testified about the events of the night in question, and alleged that Midgett raped her. After her testimony, the State called Officer Barvels. Barvels was asked to testify about the statements K.R.B. made to him in his investigation. Midgett objected on the grounds of hearsay. After an unreported bench conference, Midgett was granted a standing hearsay objection. Barvels was then permitted to repeat K.R.B.'s out-of-court statements.

[¶ 24.] Detective Duven was also asked to repeat statements K.R.B. made during his investigation. Midgett again objected on the grounds of hearsay. The trial court overruled the objection because "the witness has already testified and I believe it falls under the exception." The court later noted that it was relying on SDCL 19–16–2 (prior consistent statements) in allowing the detectives to testify about what K.R.B. had told them in their investigation.

[¶ 25.] SDCL 19–16–2(2) (Fed R Evid 801(d)(1)(B)) "allows the admission of out-of-court statements as nonhearsay, if the statements are consistent with the declarant's in-court statements and are offered to rebut an express or implied charge of recent fabrication or improper motive." *State v. Thompson*, 379 N.W.2d 295, 296 (S.D.1985). The rule provides:

A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]

SDCL 19–16–2(2) (Fed R Evid 801(d)(1)(B)).

[¶ 26.] This hearsay exception is, however, rather narrow. Prior consistent statements are generally excluded because they are irrelevant until the witness's credibility has been attacked. *State v. Devall*, 489 N.W.2d 371, 376 (citing *Thompson*, 379 N.W.2d at 297). Therefore, prior to admission, the trial court must make a number of preliminary determinations. *State v. Moriarty*, 501 N.W.2d 352, 357 (S.D.1993).

Before a prior consistent statement will qualify as nonhearsay under the rule, the proponent must demonstrate three things. First, [the proponent] must show the prior consistent statement is consistent with the [witness's] in-court testimony. Second, [the proponent] must establish that the statement is being used to rebut an express or implied charge against the witness of recent fabrication or improper motive or influence. Finally, the proponent must demonstrate that the prior consistent statement was made prior to the time the supposed motive to falsify arose.

*Thompson*, 379 N.W.2d at 296 (citing *United States v. Quinto*, 582 F.2d 224 (2dCir.1978)).

[¶ 27.] Here, the State cannot demonstrate the second and third prerequisites. Even if the prior statements were "con-

sistent" with K.R.B.'s in-court testimony under the first prerequisite, there is no evidence they were made prior to, and offered to rebut, a charge of recent fabrication or improper motive under the second and third prerequisites. On the contrary, these statements were made to the two officers *after* the alleged improper motive to fabricate arose; i.e. they were made after the alleged abortion. Because the statements were made after the alleged motive to fabricate arose, they were not probative to corroborate K.R.B.'s trial testimony. As we previously noted:

> Substantive use under Rule 801(d)(1)(B) is limited to situations where high probative value is most likely. Evidence which counteracts the suggestion that the witness change[d][her] story in response to some threat or scheme or bribe by showing that [her] story was the same prior to the external pressure is highly relevant in shedding light on the [witness's] credibility. Evidence which merely shows that the witness said the same thing on other occasions when [her] motive was the same does not have much probative force 'for the simple reason that mere repetition does not imply veracity.'

*State v. Carlson*, 392 N.W.2d 89, 91 (S.D. 1986) (quoting 4 J. Weinstein & M. Berger, *Weinstein's Evidence* 801–150–151).

■ [¶ 28.] The State, however, submits that the trial court's ruling can be supported by other grounds, and that the trial court "may have reached the right result albeit based on the wrong reason." *See Bohlmann v. Lindquist*, 1997 SD 42, ¶ 9, 562 N.W.2d 578, 580. The State specifically argues that the officers' statements fall within the "fact of the complaint" rape exception recognized in *Devall*. Under that exception to the hearsay rule, some limited out-of-court declarations are admissible to prove that a complaint of rape was made. *Devall*, 489 N.W.2d at 375. The State also argues that the statements were contemporaneous and excited utterances, which were made when K.R.B. was "still under the stress of the event." *Id.* at 380 (Miller, C.J., dissenting).

■ [¶ 29.] We first address the "fact of the complaint" hearsay exception recognized in *Devall*. *Id.* In that case, this Court explained the exception and the reasons for it, stating:

> Generally, the testimony of a witness cannot be bolstered or supported by showing that a witness made similar statements out of court in harmony with her testimony on the stand. M. Graham, Handbook of Federal Evidence § 801.12, at 760 (3rd ed 1991). There is an exception to this rule in rape cases which permits testimony to prove [a] complaint was made.

> 'Since it is natural for a woman or child to complain to someone responsible for her welfare of an outrage of this character, the failure to complain could be urged by the defense to contradict or discredit her testimony. Because of this[,] cases generally allow the prosecution to forestall such discrediting, or any inference derived from failure to complain, by admitting testimony of the fact of the complaint[.]'

*Id.* at 375 (quoting *State v. Thorpe*, 83 S.D. 499, 162 N.W.2d 216, 218 (S.D.1968) (further citations omitted)). However, this Court cautioned that:

> [T]he rule allows no further proof than that fact [that the complaint was made] and possibly proof of what was said as to the name of the guilty party. 'It does not permit testimony of the third party relating what the complaining witness said as to the details of the offense[.]'

*Id.* (citations omitted). This Court further cautioned that[t]he rape complaint exception is limited to testimony that in fact [a] complaint was made, *not* to show the truth of the matter asserted." *Id.* (citations omitted).

[¶ 30.] Here, many of the statements violate these restrictions. Some of the statements involved the details of the offense, and some were offered to prove the truth of the matter asserted.

■ [¶ 31.] The statements may also fail to qualify as excited utterances unless they relate "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition[.]" *Id.* at 374 (quoting SDCL 19–16–6). The problem here is that the trial court did not determine whether each statement at issue was made under the stress of excitement caused by this event. Although the State argues that officer Barvels indicated K.R.B. "seemed to—appeared to be shaken," he also testified that she "just seem[ed] hesitant about coming over to talk to me. [She] just kind a stayed back." Therefore, while K.R.B. may have been under the requisite stress of excitement when she made some of the statements to Barvels, we cannot, from the State's limited citation to the record, make that assessment for all the statements.

Moreover, the State has not cited any "stress of excitement" evidence supporting the admission of the other investigative statements made to officer Duven.

■ [¶ 32.] The State finally argues that K.R.B.'s statements were admissible as contemporaneous or *res gestae* declarations. SDCL 19–16–5 provides:

A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter, is not excluded by § 19–16–4, even though the declarant is available as a witness.

However, as in the preceding analysis, the trial court did not make the requisite "contemporaneous" finding. Therefore, we cannot make the admissibility determination from this record.

[¶ 33.] We reverse on Issue 1, and remand for new trial and a re-consideration of the remaining evidentiary issues.[4] In light of the remand, we need not reach Midgett's remaining issues.

[¶ 34.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.

4. On March 8, 2004, the United States Supreme Court held that "testimonial" out-of-court statements, admissible under a hearsay exception, are nevertheless barred by the Confrontation Clause unless the witness is unavailable and the defendant had an opportunity to cross-examine the witness concerning those statements. *Crawford v. Washington,* —— U.S. ——, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004) (overruling the "firmly rooted" and "expressly reliable" tests of *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597). However, *Crawford* expressly noted that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.* at n. 9 (citing *California v. Green,* 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)). "The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.* Because *Crawford* was decided after appellate briefing was completed, but before this matter was considered by this Court, counsel have not had the opportunity to argue whether the statements were admissible because K.R.B. was "available" for confrontation within the meaning of footnote nine. Therefore, we also leave this issue for the trial court's consideration on remand.